IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SYMBOLOGY INNOVATIONS, LLC | § § § | Civil Action No. 2:15-cv-1169-JRG-RSP |
| Plaintiff, | § § | (Consolidated) |
| vs. | § § | JURY TRIAL DEMANDED |
| ADAMS EXTRACT, | § § | LEAD CASE |
| Defendant. | § § § | |
| SYMBOLOGY INNOVATIONS, LLC | § § | Civil Action No. 2:15-CV-1866-JRG-RSP |
| Plaintiff, | § § § | |
| vs. | § § § | |
| J5CREATE, | § § § | |
| Defendant. | § § | |

**DEFENDANT J5CREATE'S MOTION TO DISMISS
PLAINTIFF'S INFRINGEMENT CLAIMS UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  SYMBOLOGY'S PATENTS RECITE SOFTWARE, NOT PACKAGING ...................... 2

    A.   The Specification Describes Software, Not Packaging ........................................... 2

    B.   The Claims Recite Software, Not Packaging........................................................... 4

        1.   Method Claims Recite Steps Performed on an Electronic Device ............. 4

        2.   Computer-Readable Medium Claims Recite Software............................... 6

        3.   "Symbology Management Application" Claims Recite Software.............. 8

III. SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A
     CLAIM OF DIRECT INFRINGEMENT ........................................................................ 10

IV. SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A
     CLAIM OF CONTRIBUTORY INFRINGEMENT ........................................................ 12

V.  SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A
     CLAIM OF INDUCED INFRINGEMENT...................................................................... 13

VI. CONCLUSION................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ...............................................................11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................12

*In re Bill of Lading Transmission and Processing System Patent Litigation*,
    681 F.3d 1323 (Fed. Cir. 2012) ................................................................................12, 13

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) .....................................................................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ...........12, 13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S.Ct. 2060 (2011) ...................................................................................................13

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) .......................................................................................8

*Joy Technologies, Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ...........................................................................................10

*Lodsys, LLC v. Brother International Corporation*,
    2012 WL 760729 (E.D. Tex. Mar. 8, 2012) ....................................................................2

*McZeal v. Sprint Nextel Corporation*,
    501 F.3d 1354 (Fed.Cir.2007) .......................................................................................10

*Superior Industries, LLC v. Thor Global Enterprises Ltd.*,
    700 F.3d 1287 (Fed. Cir. 2012) ................................................................................12, 13

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    Case No. 6:12-CV-366 MHS-JDL, 2013 WL 8482270 (E.D. Tex. Mar. 6,
    2013) .............................................................................................................................13

**Other Authorities**

https://en.wikipedia.org/wiki/QR_code ....................................................................................11

*Order* (U.S. Apr. 29, 2015)
   *http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf* ...........................2

I.      INTRODUCTION

Plaintiff Symbology Innovation LLC's ("Symbology's") Complaint for patent infringement against Defendant KaiJet Technology International Ltd. d/b/a j5create ("j5create") should be dismissed because the complaint fails to allege that j5create does something that infringes its patents. J5create is accused of including a two-dimension barcode (i.e. "QR code") on the packaging of one of its VGA adapter products. The VGA adapter itself is not accused of infringement, just the packaging. However, the claims of Plaintiff's patents are drawn, not to a barcode or to packaging with a barcode, but to a software-implemented method for "capturing," "detecting," "decoding," and otherwise processing these barcodes on an "electronic device," such as a mobile phone, to display information about a product on that device. Symbology makes no allegation that j5create makes, uses, sells or offers to sell in the United States (or import into the U.S.) such software or an electronic device that includes such software. The reason is that j5create does not, and Symbology knows it.

The most j5create could be accused of doing is somehow inducing or contributing to third parties' capturing and processing QR codes on their own "electronic device[s]." The problem with that theory is that Symbology makes no allegation that j5create was even aware of the asserted patents, let alone had the requisite intent to induce or contribute to another's infringement. Once again, the reason is that j5create had no such intent. Now that it is aware of the patents, even though printing QR codes on its packaging clearly does not infringe the asserted patents,[1] j5create has stopped using the codes on its packaging altogether because the value of these codes is dubious

---

[1] Nor could it infringe because QR codes—and even apps for processing those codes—predate the patents by several years, making this case all the more exceptional. *See, e.g.*, http://www.qrcode.com/en/history/ ("In 1994, DENSO WAVE (then a division of DENSO CORPORATION) announced the release of its QR Code"); http://collectivelab.typepad.com/collectivelab/2008/10/android-mobile-retail-apps-shopsavvy-vs-compare-everywhere.html (apps for use in conjunction with QR codes to receive information about a product).

Motion to Dismiss                              - 1 -

at best and is far outweighed by the potential cost of this litigation.  Symbology has no complaint against j5create, and it knows it.

Symbology is well aware of all these facts but has steadfastly refused to voluntarily dismiss j5create from this case.  As a result, j5create is forced to move the Court to dismiss Symbology's Complaint under Rule 12(b)(6) because it is legally and factually deficient.  While j5create is aware that such motions are "viewed with disfavor and rarely granted," *Lodsys, LLC v. Brother International Corporation*, 2012 WL 760729, at *1 (E.D. Tex. Mar. 8, 2012), absent an early dismissal j5create will be forced into the Hobson's choice of settling with the Plaintiff or expending considerable resources litigating the scope and validity of patents that it does not infringe as a matter of law, in hopes of eventually recovering its attorneys' fees under 35 U.S.C. § 285.  To avoid this dilemma, Defendant respectfully requests that its motion to dismiss be granted.

To the extent that Symbology seeks to file an amended complaint, it should be ordered to plead all of its claims with the specificity required by the Supreme Court's *Iqbal*/*Twombly* standard.  Even though its original complaint was filed one week before the new Federal Rules went into effect, Symbology should at least be put to this level of investment given the level of expense required of j5create to defend itself.  *See Order* (U.S. Apr. 29, 2015) ("the foregoing amendments … shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced, and, **insofar as just and practicable, all proceedings then pending.**"), available at *http://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf*.

## II.     SYMBOLOGY'S PATENTS RECITE SOFTWARE, NOT PACKAGING

### A.     The Specification Describes Software, Not Packaging

All three of the asserted patents in this case—U.S. Pat. Nos. 8,424,752 ("the '752 patent"), 8,651,369 ("the '369 patent"), and 8,936,190 ("the '190 patent")—quite clearly, repeatedly, and explicitly require "capturing," "detecting," "decoding," and processing "symbology," e.g., a barcode, not the barcode itself or packaging containing a barcode.  (Doc. No. 1-2, 1-3, 1-4.)  In fact, a barcode is not even illustrated in the Symbology patents because capturing and decoding a

barcode, even on a mobile device, was admittedly well known by 2010, when the original application was filed. (Doc. No. 1-2 at 3:50–55.)

From top to bottom, the asserted patents focus on the software on the portable electronic device, not the barcode or the packaging itself. The asserted patents all stem from a common application and thus share the same specification. The common titles of the three patents reveal the true nature of the disclosure—"System and Method for Presenting Information about an Object on a Portable Electronic Device." The field of the invention likewise focuses, both "generally" and "more particularly," on the technology that "enables" processing of barcodes on "portable electronic devices" to display relevant information about a particular product on that same device, not the barcodes themselves. (Doc. No. 1-2 at 1:17–20.) The common Abstract provides a summary of the method according to "one embodiment" of this "enabling" technology for "a portable electronic device." (Doc. No. 1-2 (Abstract); *see also* 1-3(Abstract) and 1-4 (Abstract).)

The drawings further illustrate the software nature of the patents. Figure 1 is a top level drawing showing a cellular phone in relationship to a wireless communication network. (Doc. 1-2 at FIG. 1.) Figure 2 shows a front and back "view of the portable electronic device" that captures, detects, and decodes the barcode, as well as displays the information about the object associated with the barcode. (*Id*. at FIGS. 2A and 2B.) Figure 3 illustrates the "various modules included in the portable electronic device" including a "CAPTURE MODULE," a "SCANNING MODULE," and a "SYMBOLOGY MANAGEMENT MODULE." (*Id*. at FIG. 3.) The portable electronic device of figure 2 communicates with a server that stores information associated with the barcode relating to various objects. A block diagram of that server is shown in figure 4 and includes an "OBJECT IDENTIFYING MODULE," a "DATABASE MANAGEMENT MODULE," and an "INFORMATION RETRIEVING MODULE," among others. (*Id*. at FIG. 4.) Figure 5 illustrates some of the software "applications" that are stored in the "storage module 66" on the portable electronic device. (*Id*. at FIG. 5; 11:1–6.) Figure 6 illustrates a "flow diagram" of the steps performed by the software on the server of figure 4, while figure 7 shows the "method that may be

performed by a portable electronic device." (*Id*. at FIGS. 6-7; 11:50–52; 11:66–12:2.) In contrast, there is not a single picture of a QR code or any other form of barcode.

### B. The Claims Recite Software, Not Packaging

All of the claims in the asserted patents require, in one way or another, software executable on an electronic device such as a mobile phone. Both the '752 and '369 patents include 28 claims, of which three are independent claims (1, 17, and 24). (Doc. No. 1-2 at 13:39–16:51; *see also* 1-3 at 13:48–16:55.) The '190 patent only includes 20 claims, but also includes three independent claims (1, 17, and 20). (Doc. No. 1-4 at 13:56–16:31.)

The three independent claims in each patent largely mirror each other. As a result, all of the claims in the three patents can be grouped into three sets:

(1) "method" claims (i.e., '752 and '369 patents, cls. 1–16; '190 patent, cls. 1–16);

(2) "computer application stored on a computer-readable medium" claims (i.e., '752 and '369 patents, cls. 17–23; '190 patent, cls. 17–19); and

(3) "symbology management application" claims (i.e., '752 and '369 patents, cls. 24–28; '190 patent, cl. 20).

As described further below, these claims are limited to the technology that enables the capture, detecting, decoding, and processing of barcodes to display information relating to an object. The claims do not cover making, using, selling or offering to sell a product with an associated barcode on the packaging, as j5create is accused of doing.

### 1. Method Claims Recite Steps Performed on an Electronic Device

The first sets of claims are method claims. These claims make up the majority (i.e., 48 out of 76) of the total claims of the asserted patents. (Doc. No. 1-2 (cls. 1–16); No. 1-3 (cls. 1–16) and No. 1-4 (cls. 1–16).) All of the method claims recite steps that are performed on an "electronic device" including, for example, "capturing a digital image," "detecting symbology associated with the digital image," and "decoding the symbology … using one or more visual detection applications residing on the [portable] electronic device," as shown below:

| U.S. Pat. No. 8,424,752 | U.S. Pat. No. 8,651,369 | U.S. Pat. No. 8,936,190 |
|---|---|---|
| "1. A method comprising: | "1. A method comprising: | "1. A method comprising: |
| **capturing a digital image using** a digital image capturing device that is part of **a portable electronic device**; | **capturing a digital image using** a digital image capturing device that is part of **a portable electronic device**; | **capturing a digital image using** a digital image capturing device that is part of **an electronic device**; |
| **detecting symbology** associated with an object within the digital image **using a portable electronic device**; | **detecting symbology** associated with the digital image **using a portable electronic device**; | **detecting symbology** associated with the digital image **using the electronic device**; |
| **decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device**; | **decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device**; | **decoding the symbology to obtain a decode string using one or more visual detection applications residing on the electronic device**; |
| sending the decode string to a remote server for processing; | sending the decode string to a remote server for processing; | sending the decode string to a remote server for processing; |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object; | receiving information about the digital image from the remote server wherein the information is based on the decode string; | receiving information about the digital image from the remote server wherein the information is based on the decode string; |
| **displaying the information on a display device associated with the portable electronic device**." (Doc. No. 1-2 at cl. 1 (emphasis added)) | **displaying the information on a display device associated with the portable electronic device**." (Doc. No. 1-3 at cl. 1 (emphasis added)) | **displaying the information on a display device associated with the electronic device**." (Doc. No. 1-4 at cl. 1 (emphasis added)) |

Motion to Dismiss - 5 -

Thus, all of the method claims require "using a portable electronic device" for, among other things, capturing an image of the barcode, detecting symbology embedded in the image, and decoding the symbology. As discussed in the next section, Symbology alleges that these steps are performed, not by j5create or the accused product, but by a "user" of an electronic device that captures an image of the QR code on the packaging of the j5create product. (*See, e.g.,* Doc. No. 1 at ¶¶13–14.) As discussed further below, however, that is not an act of direct infringement by j5create and it lacked the requisite intent (among other things) to indirectly infringe.

### 2. Computer-Readable Medium Claims Recite Software

The patents also include a second set of "computer-readable medium" claims to the software "logic" to implement the corresponding method claims. This set includes claims 17–23 of the '752 and '369 patents as well as 17–19 of the '190 patent. These claims recite, for example, "logic adapted to capture a digital image using a digital image capturing device that is part of [an] electronic device" and "logic adapted to detect symbology," as shown below:

| U.S. Pat. No. 8,424,752 | U.S. Pat. No. 8,651,369 | U.S. Pat. No. 8,936,190 |
|---|---|---|
| "17. **A computer application stored on a computer-readable medium and executable by a processing device incorporated in a portable electronic device**, the computer application comprising: | "17. **A computer application stored on a computer-readable medium and executable by a processing device incorporated in a portable device**, the computer application comprising: | "17. **A computer application stored on a computer-readable medium and executable by a processing device incorporated in an electronic device**, the computer application comprising: |
| **logic adapted to capture a digital image using a digital image capturing device that is part of a portable electronic device;** | **logic adapted to capture a digital image using a digital image capturing device that is part of a portable electronic device;** | **logic adapted to capture a digital image using a digital image capturing device that is part of the electronic device;** |

| U.S. Pat. No. 8,424,752 | U.S. Pat. No. 8,651,369 | U.S. Pat. No. 8,936,190 |
|---|---|---|
| **logic adapted to detect symbology** associated with an object using one or more visual detection applications; | **logic adapted to detect symbology** associated with an object using one or more visual detection applications; | **logic adapted to detect symbology** associated with an object using one or more visual detection applications; |
| **logic adapted to decode the symbology** to obtain a decode string using the one or more visual detection applications; | **logic adapted to decode the symbology** to obtain a decode string using the one or more visual detection applications; | **logic adapted to decode the symbology** to obtain a decode string using the one or more visual detection applications; |
| logic adapted to send the decode string to a remote server for processing; | logic adapted to send the decode string to a remote server for processing; | logic adapted to send the decode string to a remote server for processing; |
| logic adapted to receive a second amount of information about the object based on the decode string from the remote server; | logic adapted to receive a second amount of information about the object based on the decode string from the remote server; | logic adapted to receive a second amount of information about the object based on the decode string from the remote server; |
| logic adapted to display the information on a display device associated with the portable electronic device." (Doc. No. 1-2 at cl. 17 (emphasis added)) | logic adapted to display the information on a display device associated with the portable electronic device." (Doc. No. 1-3 at cl. 17 (emphasis added)) | logic adapted to display the information on a display device associated with the electronic device." (Doc. No. 1-4 at cl. 17 (emphasis added)) |

These "logic" claims are the software analog of the corresponding method claims. The software elements of the claims are "executable by a processing device incorporated in a [portable] electronic device." Once again, j5create is not accused of making, using or selling such software or even an "electronic device" having such software. Instead, j5create is accused of selling a VGA adapter that has a barcode on its packaging that may be captured by a third parties' device that

Motion to Dismiss        - 7 -

purported includes this software. However, that is neither an act of direct nor indirect infringement by j5create.

### 3. "Symbology Management Application" Claims Recite Software

Finally, the three patents include a third set of claims drawn on a "symbology management application." This set includes claims 24–28 of the '752 and '369 patents as well as claim 20 of the '190 patent. As shown below, these claims recite a series of "module[s]" that perform many of the method steps recited above, e.g., "detecting," "decoding," etc. At the end of the process, "a decode string" is sent to "one or more visual applications for processing," which reside on "an electronic device," i.e., "a mobile device."[2]

| U.S. Pat. No. 8,424,752 | U.S. Pat. No. 8,651,369 | U.S. Pat. No. 8,936,190 |
|---|---|---|
| "24. **A symbology management application** comprising: | "24. **A symbology management application** comprising: | "20. **A symbology management application** comprising: |
| receiving a digital image from a digital image capturing device; | receiving a digital image from a digital image capturing device; | receiving a digital image from a digital image capturing device; |
| **a symbology detecting module** configured to detect symbology associated with an object; | **a symbology detecting module** configured to detect symbology associated with an object; | **a symbology detecting module** configured to detect symbology associated with an object; |

---

[2] These claims also appear to be indefinite because they recite both a method step (*i.e.*, "receiving a digital image") and apparatus elements (*e.g.*, "a symbology detecting module"). *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (a single claim which claims "both an apparatus and a method of using that apparatus renders a claim indefinite under [35 U.S.C.] section 112, paragraph 2.") However, it is unnecessary to resolve this issue in this motion.

Motion to Dismiss - 8 -

| U.S. Pat. No. 8,424,752 | U.S. Pat. No. 8,651,369 | U.S. Pat. No. 8,936,190 |
|---|---|---|
| a decoding module configured to decode the symbology to obtain a decode string; | a decoding module configured to decode the symbology to obtain a decode string; | a decoding module configured to decode the symbology to obtain a decode string; |
| **a transferring module configured to send the decode string to** one or more visual detection applications for processing, the **one or more visual detection applications residing on a mobile device;** and | **a transferring module configured to send the decode string to** one or more visual detection applications for processing, the **one or more visual detection applications residing on a mobile device;** and | **a transferring module configured to send the decode string to** one or more visual detection applications for processing, the **one or more visual detection applications residing on an electronic device**; and |
| **an information storage module configured to** receive information about the object from the remote server, and **provide the information to a display device for display of the information**." (Doc. No. 1-2 at cl. 24 (emphasis added)) | **an information storage module configured to** receive information about the object from the remote server, and **provide the information to a display device for display of the information**." (Doc. No. 1-3 at cl. 24 (emphasis added)) | **an information storage module configured to** receive information about the object from the remote server, and **provide the information to a display device for display of the information**." (Doc. No. 1-4 at cl. 20 (emphasis added)) |

As shown above, none of the independent claims in any of the three asserted patents recite a QR code alone or in combination with packaging. Instead, they all relate to a method for capturing, detecting, decoding, and processing the symbology or the software to do the same, as indicated by the Title, the Field of the Invention, the Abstract, the drawings, the detailed description, and, of course, the claims themselves. However, j5create is not in the business of making, using, selling, offering for sale in the United States, or importing into the United States, such software or devices having such software. As explained further below, Symbology

Motion to Dismiss                              - 9 -

effectively concedes as much in its Complaint. As a result, the Complaint should be dismissed because it fails to allege sufficient facts to support a claim of infringement against j5create.

### III. SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A CLAIM OF DIRECT INFRINGEMENT

Symbology's complaint includes three counts—one for each of the asserted patents. Symbology makes the same conclusory infringement allegations against j5create for all three patents:

> 13. Upon information and belief, ***Defendant has infringed and continues to infringe*** one or more claims, including at least Claim 1, of the '752 Patent ***by making, using, and/or printing Quick Response Codes (QR codes) covered by one or more claims of the '752 Patent***. Defendant has infringed and continues to infringe the '752 Patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

(Doc. No. 1 at ¶13 (Count I) (emphasis added); *see also id*. at ¶23 (Count II) and ¶33 (Count III).) This allegation is legally and factually deficient to support a claim of direct infringement.

Claim 1 is a method claim. In order for j5create to infringe these method claims, it must practice the claimed method. *See Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed. Cir. 1993) ("a method or process claim is directly infringed only when the process is performed.")*; See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007) (all elements must be attributable to a single actor). Symbology makes no allegation that j5create performs the claimed method. Instead, it alleges that j5create performs a step NOT required by the claims—"making, using, and/or printing Quick Response Codes (QR codes)." Even now defunct Form 18 required the Plaintiff to allege that the thing that allegedly infringes (i.e., "electric motors") was the thing patented (i.e., "electric motor"). *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356–57 (Fed.Cir.2007). Symbology's allegation of direct infringement does not even do that.

The only other factual allegation made by Symbology also is insufficient to support a claim of direct infringement. Symbology makes the following wholly conclusory, unsubstantiated allegation on "information and belief":

> 14. On information and belief, ***Defendant has, at least through internal testing, made, used, and/or printed QR codes on printed and/or electronic media, including advertising and packaging, associated with select products and/or services.*** One specific example of Defendant's activity involves the use of QR codes on packaging associated with its VGA & Gigabit Ethernet USB 3.0 Multi-Adapter product. A user scanning the QR Code is provided with information about the product including, for example, information regarding where and how to purchase the product. Upon being scanned, the QR code remotely transmits information regarding the product to the user via a device, such as a smart phone, for example. ***The use of QR codes in this manner infringes at least Claim 1 of the '752 Patent***.

(Doc. No. 1 at ¶14 (Count I) (emphasis added); *see also id*. at ¶24 (Count II) and ¶34 (Count III).) Once again, Symbology alleges that j5create infringes claim 1 by making, using, and/or printing "QR codes on printed and/or electronic media . . . associated with select products," namely "its VGA & Gigabit Ethernet USB 3.0 Multi-Adapter product." However, as shown above, that is not what is claimed in claim 1.

Symbology effectively concedes that j5create does NOT perform the claimed method. Instead, Symbology alleges that "[a] user" performs the step of "scanning the QR code." Symbology makes no allegation that this step was performed by j5create or attributable to j5create. As a result, this too fails to state a claim of direct infringement by j5create. *See Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).

Symbology's allegation also is nonsensical. It alleges that "[u]pon being scanned, *the QR code remotely transmits information* regarding the product to the user." A QR code is a "two-dimensional barcode." See https://en.wikipedia.org/wiki/QR_code. As a barcode, it has no intelligence or ability to transmit information. Only software that processes the code can do that and Symbology makes no allegation that j5create makes, uses, or sells such software. As such, Symbology's infringement allegation is not "plausible on its face," and should be disregarded. *See*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Symbology makes no allegation that j5create directly infringes the other independent claims relating to the corresponding software. That is not surprising because j5create does not make, use or sell in the United States (or import into the U.S.) any such software. Moreover, any hardware or software on the user's device, i.e., "smart phone," that allegedly satisfies the elements of these claims was neither created by nor installed on the user's device by j5create. As a result, the functionality on this device cannot be attributed to j5create. *See Akamai,* 797 F.3d at 1022.

Because Symbology fails to allege sufficient facts, its claims of direct infringement under Counts I–III should be dismissed.

## IV. SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A CLAIM OF CONTRIBUTORY INFRINGEMENT

Symbology's claims against j5create of indirect infringement are likewise deficient. "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012). Additionally, a plaintiff must plead facts that support a reasonable inference that the accused components are "especially made or especially adapted for use in an infringement of such patent. . . ." *See Superior Indus.,* 700 F.3d at 1295–96; *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *5 (E.D. Tex. Aug. 14, 2015) (quoting *Bill of Lading*, 681 F.3d at 1337). Symbology alleges neither.

Symbology states, without support, that "Defendant has infringed and continues to infringe [each of the patents-in-suit] either directly or indirectly through acts of contributory infringement . . . ." (Doc. No. 1, ¶¶ 13, 23, 33). As shown above, Symbology fails to allege facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses. *In re Bill of Lading,* 681 F.3d at 1337. The contributory infringement allegations are further deficient

because Symbology does not even allege that any allegedly infringing component was especially made or especially adapted for infringement of the patents-in-suit let alone any facts that support an inference of the same. *Superior Indus.*, 700 F.3d at 1295–96; *Core Wireless*, 2015 WL 4910427, at *5. As a result, Symbology's claims of contributory infringement should be dismissed.

V. **SYMBOLOGY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A CLAIM OF INDUCED INFRINGEMENT**

To state a claim for induced infringement, a plaintiff must, among other things, plead facts that allow an inference that the defendant "specifically intended [its] customers to infringe the . . . patent and knew that the customer's acts constituted infringement." *In re Bill of Lading*, 681 F.3d at 1339. "It is well-established that 'naked assertions devoid of further factual enhancement' are insufficient to state a claim." *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, Case No. 6:12-CV-366 MHS-JDL, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013) (quoting *Iqbal*, 556 U.S. at 678).

Symbology similarly states, without support, that "Defendant has infringed and continues to infringe [each of the patents-in-suit] either directly or indirectly through acts of . . . inducement . . . ." (Doc. No. 1, ¶¶ 13, 23, 33). Again, in violation of *Bill of Lading*, Symbology fails to plead facts that allow an inference that j5create specifically intended its customers to infringe the patents-in-suit and/or knew that its customer's acts constituted infringement. (*Id.* at ¶ 14; *see also id.* at ¶¶ 24, 34.) Because Symbology alleges no facts about j5create's knowledge or intent with regard to infringement by customers or other third parties, its claim of induced infringement should be dismissed. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011) ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

To the extent that Symbology intends to rely on the Complaint as providing knowledge of the asserted patents that too must fail. First, the Complaint makes no allegation about subsequent knowledge of the patents as a basis for inferring intent. Second, upon service of the Complaint, j5create informed Symbology that it intended to remove QR codes from all of its packaging going

forward. This subsequent remedial act is the antithesis of the type of intentional act necessary to encourage another to infringe upon the asserted patent. That should be the end of Symbology's inducement claim against j5create.

## VI. CONCLUSION

As set forth above, Symbology has failed to plead sufficient facts that can legally support a claim of infringement by j5create, either direct or indirect. Accordingly, j5create respectfully requests dismissal of the Complaint in this case. To the extent that Symbology seeks to file an amended complaint, it should be ordered to plead its claims with the specificity required by the Supreme Court's *Iqbal/Twombly* standard, even though its original complaint was filed one week before the new Federal Rules went into effect. Such a result would be "just and practicable." *See Order* (U.S. Apr. 29, 2015).

DATED: February 19, 2016.    Respectfully submitted,

/s/ *Peter J. Ayers*
Peter J. Ayers
Texas State Bar No. 24009882

LEE & HAYES, PLLC
11501 Alterra Parkway, Ste. 450
Austin, TX 78758
Telephone: 512-605-0252
Facsimile: 512-605-0269
peter@leehayes.com

Attorney for Defendant j5create

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on February 19, 2016. Any other counsel of record will be served by facsimile transmission and/or U.S. Mail.

                                              */s/ Peter J. Ayers*
                                              Peter J. Ayers